**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | |
|---|---|
| MICHAEL S. DAY JR. as Personal Representative and Administrator of the Estate of Michael S. Day, Sr., *et al.* | |
| Plaintiffs | Case No. 1:16-cv-03944-ELH |
| v. | |
| JOHNS HOPKINS HEALTH SYSTEM CORPORATION, *et al.* | |
| Defendants | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Andrew Jay Graham (Bar No. 00080)
Amy E. Askew (Bar No. 26709)
Justin A. Redd (Bar No. 18614)
KRAMON & GRAHAM PA
One South Street
Suite 2600
Baltimore, Maryland 21202-3201
(410) 752-6030 (telephone)
(410) 539-1269 (facsimile)
agraham@kg-law.com
aaskew@kg-law.com
jredd@kg-law.com

*Attorneys for Defendant Paul Wheeler, M.D.*

Robert J. Mathias (Bar No. 00253)
James D. Mathias (Bar No. 06311)
Benjamin D. Schuman (Bar No. 28829)
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (telephone)
(410) 580-3001 (facsimile)
robert.mathias@dlapiper.com
james.mathias@dlapiper.com
ben.schuman@dlapiper.com

*Attorneys for Defendants The Johns Hopkins Health System Corporation, The Johns Hopkins Hospital, Inc., Johns Hopkins Imaging, LLC, and The Johns Hopkins University*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ............................................................................. 2

STANDARD OF REVIEW .................................................................................................. 8

ARGUMENT ..................................................................................................................... 9

  I.  PLAINTIFFS' CLAIMS ARE BARRED BY THE ABSOLUTE LITIGATION
     PRIVILEGE .............................................................................................................. 9

    **A.**  The Litigation Privilege Protects Witnesses from Civil Liability ..................... 9

    **B.**  The Litigation Privilege Applies to BLBA Proceedings ................................ 11

    **C.**  Any Allegedly "False Statements" Made in Dr. Wheeler's Role as an Expert Witness
       for BLBA Proceedings Are Protected by the Litigation Privilege ................................ 12

  II.  PLAINTIFFS' ATTEMPT TO SUE AN ADVERSE EXPERT VIOLATES
      EXHAUSTION REQUIREMENTS, USURPS THE EXCLUSIVITY OF THE BLBA
      REGIME, AND IGNORES FUNDAMENTAL CONCEPTS OF DUTY OF CARE AND
      CAUSATION ........................................................................................................ 13

    **A.**  The BLBA Claimants Must Exhaust Administrative Remedies ..................... 14

    **B.**  BLBA Remedies Are the Exclusive Means to Obtain Black Lung Benefits ................. 16

    **C.**  Plaintiffs' Attempt to Recover Statutory Benefits Through Legal Claims Against an
       Adverse Expert Disregards Fundamental Concepts of Duty of Care and Causation ..... 17

  III.  PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS .... 20

  IV.  PLAINTIFFS FAIL TO STATE A CLAIM ON EACH OF THEIR COUNTS .............. 22

    **A.**  Plaintiffs' Fraud Count Fails to State a Claim ............................................. 22

    **B.**  Plaintiffs' Tortious Interference Count Fails to State a Claim ....................... 24

    **C.**  Plaintiffs' Civil RICO Count Fails to State a Claim ..................................... 25

    **D.**  Plaintiffs' Negligent Misrepresentation Count Fails to State a Claim ........... 32

    **E.**  Plaintiffs' Unjust Enrichment Count Fails to State a Claim .......................... 33

V.   PLAINTIFFS MAKE NO SPECIFIC ALLEGATIONS AGAINST ANY OF THE
      HOPKINS ENTITIES........................................................................................................... 34

CONCLUSION............................................................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

*A Society Without A Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011) ............................................9

*Adams v. NVR Homes, Inc.*, 193 F.R.D. 243 (D. Md. 2000) ...........................................................9

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) ..............................20

*Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000)................................26, 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................8, 34

*Baker v. Sturdy Built Mfg., Inc.*, No. 3:07CV212-HEH, 2007 WL 3124881
    (E.D. Va. Oct. 23, 2007) .........................................................................................................31

*Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535 (D. Md. 2006) ......................................24, 25

*Barr v. Eastern Associated Coal Corp.*, Nos. 2012-BLA-06060, 2013-BLA-05428, Decision and
    Order (DOL June 22, 2015) ....................................................................................................7

*Bast v. Cohen, Dunn & Sinclair P.C.*, 59 F.3d 492 (4th Cir. 1995) ............................................30

*Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776 (6th Cir. 2000) ..................................................29

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................8-9, 34

*Benson v. State*, 389 Md. 615 (2005).............................................................................................33

*BethEnergy Mines Inc. v. Cunningham*, 104 F. App'x 881 (4th Cir. 2004)................................14

*Biggs v. Eaglewood Mortgage*, 582 F. Supp. 2d 707 (D. Md. 2008) ......................................26, 27

*Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*,
    790 F.3d 657 (6th Cir. 2015) .................................................................................................15

*Brink v. Continental Insurance Company*, 787 F.3d 1120 (D.C. Cir. 2015) ...............................16

*Briscoe v. LaHue*, 460 U.S. 325 (1983)...................................................................................10, 21

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ....................31

*Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 3d 423 (D. Md. 2014)......................5, 9, 27, 32

*California v. Green*, 399 U.S. 149 (1970) .....................................................................................21

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).................................................28

*Columbia Gas Transmission, LLC v. Mangione Enters. of Turf Valley, L.P.*, Nos. ELH-13-0115, ELH-13-2317, 2014 WL 4854853 (D. Md. Sept. 26, 2014)............................................. 32-33

*Comp. Dep't of Dist. Five, United Mine Workers of Am. v. Marshall*, 667 F.2d 336 (3d Cir. 1981)............................................................................16

*Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467 (C.D. Cal. 1991)......................31

*Cooper v. Parker-Hughey*, 894 P.2d 1096 (Okla. 1995) ................................................13

*Day v. Eastern Associated Coal Corp.*, BRB No. 10-0115 BLA, 2010 WL 4539414 (DOL Ben. Rev. Bd. Oct. 14, 2010) ........................................................................... 6, 23-24

*Day v. Eastern Associated Coal Corp.*, Case No. 2006 BLA 5411 (May 31, 2011).....................7

*Day v. Eastern Associated Coal Corp.*, BRB No. 11-0667 BLA, 2012 WL 3276640 (DOL Ben. Rev. Bd. July 13, 2012) ........................................................................7

*Day v. Eastern Associated Coal Corp.*, Case No. BR7CV-2013318, Proposed Decision and Order (DOL Sept. 18, 2014) ..................................................................8

*Detrick v. Panalpina, Inc.*, 108 F.3d 529 (4th Cir. 1997)............................................20

*Dickerson v. TLC The Laser Eye Center Institute, Inc.*, 493 F. App'x 390 (4th Cir. 2012)..........30

*Dir., Office of Workers' Comp. Programs, U. S. Dep't of Labor v. Peabody Coal Co.*, 554 F.2d 310 (7th Cir. 1977) ....................................................................16

*Drummond Co., Inc. v. Dir., Office of Workers' Comp. Programs*, 650 F. App'x 690 (11th Cir. 2016)...............................................................................15

*Eastern Associated Coal Corporation v. Dir., Office Of Workers' Comp. Programs*, 805 F.3d 502 (4th Cir. 2015) ................................................................3

*Employer Teamsters-Local Nos. 175/505 Health and Welfare Trust Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463 (S.D. W. Va. 2013) ........................................33

*Erpelding v. Lisek*, 71 P.3d 754 (Wyo. 2003).............................................................18

*Eye Med. & Surgical Ass'n, Inc. v. Advantage Health Partners*, No. 84585, 2005 WL 23360 (Ohio App. Jan. 6, 2005)...............................................................13

*Feild v. Graffagnino*, 514 F. Supp. 2d 1036 (W.D. Tenn. 2007)...............................18

*Fox v. Elk Run Coal Co., Inc.*, 739 F.3d 131 (4th Cir. 2014) ........................... 2, 17, 21-22, 23, 27

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76 (2000) .................................21

*Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568 (W. Va. 2013) .22

iv

*G&M Oil Co. v. Glenfed Fin. Corp.*, 782 F. Supp. 1085 (D. Md. 1991) ..................................... 20

*Gondel v. PMIG 1020, LLC*, No. CCB-08-1768, 2009 WL 248681
    (D. Md. Jan. 22, 2009) .............................................................................................. 28, 29

*Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714 (D. Md. 2014) .......................................... 20

*Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1 (2000) ............................................................. 32

*Hafner v. Beck*, 916 P.2d 1105 (Ariz. Ct. App. 1995) ........................................................ 18

*Hatfield v. Health Mgmt. Assocs. of West Virginia*, 672 S.E.2d 395 (W. Va. 2008) .................... 24

*Henkemeyer v. Boxall*, 465 N.W.2d 437 (Minn. Ct. App. 1991) ......................................... 18

*Harris v. King*, 60 Cal. App. 4th 1185 (1998) .................................................................. 12

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ..................... 9, 31

*Helton v. Peabody Coal Co.*, No. 96-3069, 1996 WL 554553 (6th Cir. 1996) ................. 14-15

*Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819 (4th Cir. 1995) ................................................. 3

*Hoechlin v. Urbiha*, 127 Wash. App. 1010 (2005) .......................................................... 13

*Hokanson v. Lichtor*, 626 P.2d 214 (Kan. App. 1981) .................................................. 18-19

*Holt v. Camus*, 128 F. Supp. 2d 812 (D. Md. 1999) ................................................... 10, 12

*In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427 (N.D. Cal. 1988) ............................. 31

*Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000) ........................................ 5

*J & M Co. v. Whynott*, No. CV040182710S, 2004 WL 2397329 (Conn. Super. Sept. 22, 2004) . 13

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) ..................... 30

*Joseph v. McCann*, 147 P.3d 547 (Utah Ct. App. 2006) .................................................. 18

*Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich. 1987) ................................................... 13

*Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621 (2003) ......................................................... 24

*Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763
    (D. Md. Mar. 17, 2015) .................................................................................................. 27

*Lafleur v. Jetzer*, No. 4:14-CV-04175-KES, 2015 WL 6157745 (D.S.D. Oct. 20, 2015) ........... 18

*Lauria v. Donahue*, 438 F. Supp. 2d 131 (E.D.N.Y. 2006) .................................................. 17

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108 (2007) ........................................................32

*Maicobo Inv. Corp. v. Von Der Heide*, 243 F. Supp. 885 (D. Md. 1965) ....................18

*Mallinckrodt v. Whittaker MA Bioproducts Inc.*, 81 Md. App. 96 (1989)...................22

*Marfork Coal Co. v. Weis*, 251 F. App'x 229 (4th Cir. 2007).......................................15

*McFarland v. Memorex Corp.*, 493 F. Supp. 631 (N.D. Cal. 1980)..............................31

*McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362 (D. Md. 2005) ...................23

*Menasco v. Wasserman*, 886 F.2d 681 (4th Cir. 1989).................................................30

*Metoyer v. Connick*, No. 99-3019, 2000 WL 863133 (E.D. La. June 26, 2000) ..........13

*Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977 (D. Md. 2002) ............................21

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993).....................................31

*Mixter v. Farmer*, 215 Md. App. 536 (2013) .......................................................10, 11

*Mnyandu v. County of Los Angeles*, No. CV 14-6485 DSF, 2015 WL 6445652
   (C.D. Cal. Aug. 4, 2015)..........................................................................................12

*Morley v. Cohen*, 610 F. Supp. 798 (D. Md. 1985) .....................................................26

*Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529 (2007) ............................22

*Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219 (4th Cir. 2009) .............15

*Norman v. Borison*, 418 Md. 630 (2011)...........................................................10, 11

*O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 222 Md. App. 492 (2015).......................... 9-10

*O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 447 Md. 394 (2016) ......................10

*Odyniec v. Schneider*, 322 Md. 520 (1991) ................................................... 11, 12-13

*Offen v. Brenner*, 553 F. Supp. 2d 565 (D. Md. 2008) ..........................................11, 13

*O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704 (2d Cir. 1990)............................ 27-28

*Pacific Emp. Ins. Co. v. Adams*, 168 P.2d 105 (Okla. 1946) .......................................12

*Plitt v. Greenberg*, 242 Md. 359 (1966) ......................................................................33

*Raju v. Boylen*, No. Civ.A. 3:04CV809LN, 2005 WL 1362960 (S.D. Miss. June 3, 2005) .........13

*Reich v. Youghiogheny & Ohio Coal Co.*, 66 F.3d 111 (6th Cir. 1995) ......................16

*Riemers v. O'Halloran*, 678 N.W.2d 547 (N.D. 2004)...................................................13

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994) .. 28-29

*Sea "B" Mining Co. v. Addison*, 831 F.3d 244 (4th Cir. 2016)...........................................2, 4-5

*Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 455 F. Supp. 2d 399 (D. Md. 2006) .20

*Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013) .....................................9, 31

*Theisler v. DiDomenico*, 747 N.E.2d 859 (Ohio Ct. App. 2000)....................................12

*U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312 (4th Cir. 2010) ...................................26

*United States v. Aguilar*, 515 U.S. 593 (1995) .........................................................28

*United States v. Allen-Williams*, No. JFM-11-1001, 2011 WL 4985817
    (D. Md. Oct. 19, 2011)........................................................................20

*United States v. Wynn*, 684 F.3d 473 (4th Cir. 2012) ...........................................27

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) .....................................................3

*Weisman v. Connors*, 312 Md. 428 (1988) .........................................................32

*Westmoreland Coal Co. v. Cochran,* 718 F.3d 319 (4th Cir. 2013) ...........................................3, 5

*West Virginia CWP Fund v. Bender*, 782 F.3d 129 (4th Cir. 2015) ...............................................2

*Whye v. Concentra Health Servs., Inc.*, No. ELH-12-3432, 2013 WL 5375167
    (D. Md. Sept. 24, 2013) ........................................................................5

*Williamson v. Harden*, 585 S.E.2d 369 (W. Va. 2003)...................................................10

*Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 WL 3829520
    (D. Md. Aug. 1, 2014)........................................................................33, 34

*Willox v. Ladas*, No. CCB-13-2096, 2014 WL 4662049 (D. Md. Sept. 18, 2014)........................20

*Wilson v. Bernet*, 625 S.E.2d 706 (W. Va. 2005) .............................................................10, 13

*Wiseman v. First Mariner Bank*, Civ. Action No. ELH-12-2423, 2013 WL 5375248
    (D. Md. Sept. 23, 2013) ........................................................................32

*World Fuel Servs. Trading DMCC v. Hebei Prince Shipping Co. Ltd.*, 783 F.3d 507
    (4th Cir. 2015)........................................................................22

*Wright v. Sutton*, No. 1:08–1431, 2011 WL 1232607 (S.D. W. Va. Mar. 29, 2011) ...................32

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994) .............................31

*View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588 (D. Md. 2014)............22, 24

*Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849 (D. Md. Sept. 5, 2014) .............................28

*Zuber v. Buie*, 849 So.2d 559 (La. Ct. App. 2003) .........................................................................13

**STATUTORY PROVISIONS AND REGULATIONS**

18 U.S.C. § 1961 ............................................................................................................22, 26, 28

18 U.S.C. § 1962 .............................................................................................................................29

18 U.S.C. § 1964 .............................................................................................................................30

28 U.S.C. § 1254 ...............................................................................................................................5

30 U.S.C. § 901 .................................................................................................................................2

30 U.S.C. § 932 .................................................................................................................................2

33 U.S.C. § 905 ...............................................................................................................................16

33 U.S.C. § 928 .................................................................................................................................2

20 C.F.R. § 718.201 .......................................................................................................................2-3

20 C.F.R. § 718.202 ......................................................................................................................3, 19

20 C.F.R. § 725.310 ...........................................................................................................................5

20 C.F.R. § 725.350 ...........................................................................................................................3

20 C.F.R. § 725.351 ...................................................................................................................3, 4, 11

20 C.F.R. § 725.362 .....................................................................................................................2, 11

20 C.F.R. § 725.363 ...........................................................................................................................2

20 C.F.R. § 725.405 ...........................................................................................................................3

20 C.F.R. § 725.406 ...........................................................................................................................3

20 C.F.R. § 725.407 ...........................................................................................................................3

20 C.F.R. § 725.408 ...........................................................................................................................3

20 C.F.R. § 725.410 ...........................................................................................................................4

20 C.F.R. § 725.414 .................................................................................4, 11

20 C.F.R. § 725.418 .................................................................................4, 12

20 C.F.R. § 725.455 .................................................................................4, 11

20 C.F.R. § 725.457 .................................................................................4, 11

20 C.F.R. § 725.458 .................................................................................4, 11

20 C.F.R. § 725.464 .................................................................................4, 11

20 C.F.R. § 725.476 .................................................................................5, 12

20 C.F.R. § 725.477 ....................................................................................5

20 C.F.R. § 725.479 ....................................................................................5

20 C.F.R. § 725.480 ....................................................................................5

20 C.F.R. § 725.481 ....................................................................................5

20 C.F.R. § 725.482 ....................................................................................5

20 C.F.R. § 802.301 ....................................................................................5

Fed. R. Civ. P. 9(b) ..................................................................... 9, 22, 25, 27, 30-31

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ...........................................................20

**INTRODUCTION**

This Court should dismiss for failure to state a claim upon which relief can be granted the attempt by Plaintiffs Michael S. Day, Jr. and Christi Ann Jordan Jarrett, as representatives of the estates of their coal miner fathers, to re-litigate administrative outcomes pursuant to the federal Black Lung Benefits Act ("BLBA") through this direct class action lawsuit against Defendants Paul Wheeler, M.D., who served as an adverse expert radiologist in the earlier adversarial proceedings, and Johns Hopkins Health System Corporation, The Johns Hopkins Hospital, Johns Hopkins Imaging, LLC, and The Johns Hopkins University. Benefits were awarded in the administrative proceedings after publication of the Center for Public Integrity article relied upon in the complaint. Plaintiffs nevertheless now pursue the legally unsupportable approach of suing the adverse expert witness directly in a separate action for damages that effectively seeks additional benefits.

Attempts to sue adverse experts have been rejected by courts throughout the country, and the approach should be rejected here as well. Plaintiffs' claims for fraud, tortious interference, civil RICO violations, negligent misrepresentation, and unjust enrichment should be dismissed as a matter of law because (1) expert witnesses in adversarial proceedings are protected by an absolute litigation privilege; (2) the BLBA process offers the exclusive forum for seeking benefits from a coal mine operator, and disappointed claimants cannot sue one of the employer's expert witnesses in court to recover additional benefits not awarded in the administrative proceedings; (3) Plaintiffs' claims are barred by the applicable statutes of limitations; and (4) Plaintiffs otherwise have not alleged facts capable of showing they are entitled to relief on any of their individual claims.

# RELEVANT FACTUAL BACKGROUND

**The Black Lung Benefits Act**

In 1969, Congress enacted the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 901, *et seq.* ("Black Lung Benefits Act" or "BLBA") for the purpose of providing compensation to coal miners (or their surviving dependents) where the coal miners successfully demonstrate that they were totally disabled due to pneumoconiosis, also known as "black lung" disease, as a result of prolonged exposure to coal dust. 30 U.S.C. § 901; *see also* Compl. ¶¶ 13-15. "The Act creates an adversarial administrative procedure designed to determine whether miners (or their surviving dependents) qualify for compensatory benefits because they suffer from coal dust-related pulmonary injuries, commonly categorized as pneumoconiosis." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 248 (4th Cir. 2016) (citing 30 U.S.C. §§ 901-944).[1]

To be entitled to benefits, a claimant must show "(1) that he has pneumoconiosis, in either its 'clinical' or 'legal' form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability." *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015).

Clinical pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. §

---

[1] All claimants are entitled to representation by counsel. 20 C.F.R. §§ 725.362, 725.363(a). Successful claimants are entitled to recover reasonable attorneys' fees. 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 928(a)); *see also Fox v. Elk Run Coal Co., Inc.*, 739 F.3d 131, 133 (4th Cir. 2014) (recognizing the BLBA's "provision for reasonable attorney's fees if a claimant is successful").

718.201(a)(1).[2]    Legal pneumoconiosis is broader than the clinical or medical definition. *Westmoreland Coal Co. v. Cochran,* 718 F.3d 319, 321 (4th Cir. 2013) (citing *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819, 821 (4th Cir. 1995)).  Legal pneumoconiosis includes "any chronic lung disease or impairment and its sequelae," including "chronic restrictive or obstructive pulmonary disease," "arising out of coal mine employment." § 718.201(a)(2).

The existence of pneumoconiosis may be established in four ways: 1) a chest x-ray; 2) a biopsy or autopsy; 3) a presumption; or 4) a medical opinion based on blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examinations, and medical and work histories.  *See* § 718.202(a).  Notably, "a claim for benefits must not be denied solely on the basis of a negative chest x-ray." § 718.202(b).

*Claim Screening by the District Director*

A claim for BLBA benefits initially is considered by a district director of the Department of Labor's Division of Coal Mine Workers' Compensation, who determines whether a claimant is eligible for benefits.  20 C.F.R. § 725.405(a).[3]  When a claim is presented, the miner is required to undergo a complete pulmonary evaluation, at no charge. § 725.406(a), (b).  If the evidence submitted by the claimant establishes eligibility for benefits, the district director notifies the coal operator of the existence of a claim. § 725.407(b).  Upon notification, the operator files a response with the district director and provides documentary evidence supporting its position. § 725.408.

---

[2] Clinical pneumoconiosis may be further classified as either "simple" or "complicated." *See Eastern Associated Coal Corp. v. Dir., Office Of Workers' Comp. Programs*, 805 F.3d 502, 505 (4th Cir. 2015) (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7 (1976)).

[3]  A district director makes determinations with respect to claims, conducts conferences and informal discovery proceedings, compels the production of documents through subpoena power, issues orders, and otherwise act to make a benefits determination.  20 C.F.R. §§ 725.350, 725.351(a).

*Initial Determination of Claim by the District Director*

After the initial screening, the district director issues a preliminary analysis of the medical evidence and a schedule for the submission of additional evidence by the parties. § 725.410. Each party may offer: 1) no more than two interpretations of chest x-rays; 2) no more than two results of pulmonary function tests; 3) no more than two results of blood gas studies; 4) no more than one report of a biopsy or autopsy; and 5) no more than two medical reports. § 725.414(a)(2)(i), (a)(3)(1). The parties also may offer the claimant's medical records of a respiratory or pulmonary or related disease, as well as physician testimony. § 725.414(a)(4), (c). The parties may submit additional evidence as rebuttal. § 725.414(a)(2)(ii), (3)(ii). The district director issues a proposed decision and order that must contain findings of fact and conclusions of law. § 725.418(b). The proposed decision and order contains a notice that any interested party may request a hearing before an administrative law judge ("ALJ"). § 725.418(c).

*Hearing Before an ALJ*

If an interested party challenges the district director's proposed decision, an ALJ conducts proceedings that include pre-hearing discovery, an evidentiary hearing with witness testimony subject to cross-examination, and briefing and argument from both sides before a decision and order is rendered.[4] "Although the regulations group the forms of permissible evidence into discrete categories, an ALJ must weigh all of the evidence together when determining whether the miner has established the presence of pneumoconiosis." *Sea "B"*

---

[4] The ALJ is authorized to administer oaths and examine witnesses, compel the production of documents through subpoena power, issue decisions and orders with respect to claims, and otherwise conduct necessary actions. §§ 725.351(b), 725.455(b). Parties also may request oral argument or written briefs. § 725.455(d). Witnesses at the hearing, including expert witnesses, testify under oath or affirmation and are subject to cross-examination by parties and questioning by the ALJ. § 725.457(a). Prior to the hearing, parties may take depositions and issue interrogatories pursuant to the rules of the federal district court covering the location in which the proceeding is pending. § 725.458. Hearings are open to the public and are recorded stenographically or mechanically. § 725.464.

*Mining Co.*, 831 F.3d at 249 (citing *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 208–09 (4th Cir. 2000)); *see also Cochran*, 718 F.3d at 320 (same).

Within 20 days of the hearing, the ALJ issues a decision and order that makes a benefits award, rejects the claim, or takes other appropriate action. § 725.476. That decision and order must contain a statement of the basis for the order, findings of fact, and conclusions of law. § 725.477(b). A party may request reconsideration of the decision and order within 30 days or request modification within one year of the order if the party believes there has been a change in conditions or a mistake of fact. §§ 725.479(b) 725.480, 725.310(a). Modification proceedings are adjudicated first by a district director and then by an ALJ. § 725.310(c).

*Appellate Rights*

Any party dissatisfied with the ALJ's final decision and order may appeal within 30 days to the Benefits Review Board ("BRB"), which may set aside findings of fact and conclusions of law if they are not "supported by substantial evidence in the record considered as a whole or in accordance with law." §§ 725.481, 802.301(a). The BRB's decision may be appealed to the appropriate Circuit Court of Appeals, which conducts a *de novo* review. § 725.482. A Circuit Court ruling may be challenged by petition for writ of certiorari to the U.S. Supreme Court. 28 U.S.C. § 1254(1).

**Plaintiffs' Allegations**[5]

Plaintiffs are the administrators of the estates of Michael S. Day, Sr. and Junior McCoy Barr, West Virginia coal miners who applied for and ultimately received benefits under the

---

[5] The well-pled allegations drawn from the complaint are treated as true solely for purposes of this motion. The Court may take judicial notice of other documents relied on by the complaint and the administrative decisions cited in this memorandum regarding claimants' benefits claims, which are in the public record, without converting this motion to dismiss into a motion for summary judgment. *See Whye v. Concentra Health Servs., Inc.*, No. ELH-12-3432, 2013 WL 5375167, at *5 (D. Md. Sept. 24, 2013) (Hollander, J.) (taking judicial notice of agency ruling as a public record); *see also Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 3d 423, 436 (D. Md. 2014) (Hollander, J.) (Court may consider documents attached to a motion to dismiss "so long as they are integral to the complaint and authentic").

BLBA program.  Compl. ¶¶ 1-2, 72, 73, 81, 84, 85, 94.  In their BLBA proceedings, the father of each Plaintiff presented expert evidence from physicians who, according to Plaintiffs, opined that each coal miner was entitled to benefits due to pneumoconiosis.  *Id.* ¶¶ 74, 86-88.

The coal mine operators who opposed the claims were assisted by several physicians serving as expert witnesses, including Dr. Wheeler, a radiologist in the Hopkins Black Lung Program, and certain of his colleagues.  Compl. ¶¶ 7, 45, 75-76, 89.  Dr. Wheeler was certified as a "B-reader" by the National Institute of Safety and Health (NIOSH).  *Id.* ¶ 45.  The "B-reader" program was instituted to create a standardized system of classification for x-ray results under the BLBA program, among other administrative regimes.  *Id.* ¶¶ 28, 33-34.

Plaintiffs allege that, in at least some of their fathers' claims, the coal mine operators presented Dr. Wheeler's reports to the tribunals along with other expert evidence and testimony.  Compl. ¶¶ 75-76, 89.   Dr. Wheeler and two of his colleagues opined that Day's x-ray results showed evidence consistent with tuberculosis, histoplasmosis, and other potential conditions, but not pneumoconiosis.  *Id.* ¶ 78.  Dr. Wheeler and one of his colleagues opined in Barr's case that pneumoconiosis was "very unlikely."  *Id.* ¶¶ 91-92.  Plaintiffs allege that, based on the entirety of competing evidence that supported or contested the BLBA claim, *id.* ¶¶ 74-76, 86-89, the adjudicator in each case denied initial claims.  *Id.* ¶¶ 77, 93.[6]

Day first filed a claim on January 19, 2005.  *Day v. Eastern Associated Coal Co.*, BRB No. 10-0115 BLA, 2010 WL 4539414, at *2 (DOL Ben. Rev. Bd. Oct. 14, 2010).  After an initial denial, Day, through counsel, appealed to the Benefits Review Board twice, arguing,

---

[6] The CPI article on which the complaint relies indicates that Day, who cooperated with the reporter, told the CPI that he was awarded benefits in 2005 and received payments totaling $46,433.50 over six years.  After the ALJ overturned that initial award in 2011, according to Day, the Labor Department sought reimbursement of those payments, but ultimately allowed Day to keep the funds.  *See* Center for Public Integrity, https://www.publicintegrity.org/2013/10/30/13637/johns-hopkins-medical-unit-rarely-finds-black-lung-helping-coal-industry-defeat (last visited January 19, 2017).

among other things, that the ALJ improperly credited Dr. Wheeler's opinion and that the ALJ erred in weighing the evidence to conclude that pneumoconiosis had not been established. *Id.* at *1, *5; *Day v. Eastern Associated Coal Corp.*, BRB No. 11-0667 BLA, 2012 WL 3276640 (DOL Ben. Rev. Bd. July 13, 2012). The BRB rejected those arguments on each appeal. *Id.* Evidence was presented from ***seven*** physicians whose opinions supported Day's claim of total disability due to pneumoconiosis and ***four*** physicians whose opinions did not support Day's claim before denying Day's claim for benefits. *See Day v. Eastern Associated Coal Corp.*, Case No. 2006 BLA 5411, op. at 6-18 (May 31, 2011) (holding that Day had not provided sufficient evidence to establish existence of pneumoconiosis).[7] The ALJ "evaluate[d] the probative value of the respective opinions" and concluded that Day was not entitled to benefits. *Id.* at 18, 21.

Barr filed four claims for benefits that were denied in 1981, 1992, 2008, and 2010, respectively, for failure to establish total disability. *See Barr v. Eastern Associated Coal Corp.*, Nos. 2012-BLA-06060, 2013-BLA-05428, Decision and Order at 9 n.26 (DOL June 22, 2015).[8] In Barr's fifth (and successful) 2015 claim for benefits, evidence was presented from ***six*** doctors whose opinions supported Barr's claims and from ***six*** doctors whose opinions did not. *Id.* at 7.

Plaintiffs' purported class action complaint relies on a 2013 article by the Center for Public Integrity ("CPI") that accused Dr. Wheeler of not adhering to the ILO classification system and substituting his own medical opinions of how chest x-rays should be interpreted for black lung purposes. Compl. ¶¶ 56-61. Following the CPI article, the Department of Labor issued guidance regarding potential recourse for claimants and their survivors who had been involved in a proceeding where Dr. Wheeler provided an adverse expert opinion. The DOL stated that the survivor of a deceased coal miner whose claim was denied more than one year ago

---

[7] A copy of Day's May 31, 2011 ALJ decision is attached as Exhibit A for the Court's convenience.
[8] A copy of Barr's June 22, 2015 Decision is attached as Exhibit B.

may file a new survivor's claim, which would be addressed through the "standard DCMWC claims process." *See Q&As – Impact of OWCP Bulletin 14-09 (Addressing Dr. Wheeler's X-ray Readings) on Previously Denied Claims*, Dep't of Labor, at 5, *available at* https://www.dol.gov/owcp/Q_and_A_BL_LETTERS_TO_CLAIMANTS.pdf.

After release of the CPI article, both claimants (or their survivors) were awarded posthumous BLBA benefits. Compl. ¶¶ 81, 94. On September 18, 2014, Day received posthumous benefits of $115,929.80, which represents monthly benefits from June 2005 (the date of the earliest medical evidence offered in that proceeding) until June 2014, the month before Day's death. *See Day v. Eastern Associated Coal Corp.*, Case No. BR7CV-2013318, Proposed Decision and Order at 2 (DOL Sept. 18, 2014).[9] Barr received posthumous monthly benefits from May 2011 (the earliest the ALJ could determine disability due to "some controversy in the record regarding when, exactly, the Miner became totally disabled" among Barr's own expert physicians) until September 2011, the month before Barr's death. *See* Ex. B at 19-20, 44. The complaint does not specify what additional benefits allegedly would have been awarded absent Dr. Wheeler's alleged misconduct.

## STANDARD OF REVIEW

A complaint is subject to dismissal if it does not meet the plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and a motion to dismiss will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-79 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555 ("[A]

---

[9] A copy of Day's September 18, 2014 Decision is attached as Exhibit C.

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'")).

"'A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer' that the plaintiff is entitled to the legal remedy sought." *Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 3d 423, 434-35 (D. Md. 2014) (Hollander, J.) (quoting *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)).

Plaintiffs' claims, which are all premised on allegedly intentional misconduct, must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999)). Rule 9(b) applies "to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (Harvey, J.).

## ARGUMENT

## I. PLAINTIFFS' CLAIMS ARE BARRED BY THE ABSOLUTE LITIGATION PRIVILEGE

### A. The Litigation Privilege Protects Witnesses from Civil Liability

Plaintiffs' claims must be dismissed because Dr. Wheeler's work as an expert witness is subject to the absolute litigation privilege, which protects litigation participants from civil liability arising from any allegedly fraudulent "words spoken or written in the course of or in connection to a judicial proceeding." *O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 222 Md.

App. 492, 511 (2015), *aff'd*, 447 Md. 394 (2016); *see also Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983) (dismissing claims against police officer who gave allegedly perjured testimony at plaintiff's criminal trial because of longstanding "immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings"); *Holt v. Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999) (Messitte, J.), *aff'd*, 217 F.3d 839 (4th Cir. 2000). Witnesses, including Dr. Wheeler, are protected by the "English" rule, "which provides that the putative tortfeasor enjoys absolute immunity from civil liability, even if the statement is wholly unrelated to the underlying proceeding." *Norman v. Borison*, 418 Md. 630, 650 (2011); *O'Brien*, 222 Md. App. at 509; *see also Briscoe*, 460 U.S. at 333-34 (witnesses are provided absolute immunity because "the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies'"); *Holt*, 128 F. Supp. 2d at 815 ("A witness is protected from liability even if his motive was malicious, if he knew the statement was false, and if his conduct was otherwise unreasonable.").[10]

The litigation privilege, which originated in the defamation context, applies to all claims that arise out of alleged misrepresentations made in connection with a judicial or quasi-judicial proceeding. *Mixter v. Farmer*, 215 Md. App. 536, 548-50 (2013); *O'Brien*, 222 Md. App. at 511-13; *see also O'Brien*, 447 Md. at 410, 414 (affirming Court of Special Appeals decision and holding that absolute litigation privilege applies to any claims sounding in tort or even in contract). The privilege applies to statements made in the course of judicial or quasi-judicial

---

[10] West Virginia likewise grants immunity to witnesses. *See, e.g.*, *Wilson v. Bernet*, 625 S.E.2d 706, 713 (W. Va. 2005) (holding, in action for tortious interference with parental or custodial relationship, that "an adverse expert witness enjoys civil immunity for his/her testimony and/or participation in judicial proceedings where such testimony and/or participation are relevant to said judicial proceedings."); *Williamson v. Harden*, 585 S.E.2d 369, 374 (W. Va. 2003) ("The court system simply could not function if it permitted a losing party to sue an adverse witness . . . simply because the losing party feels the witness testified falsely or inaccurately.").

proceedings, *see Norman*, 418 Md. at 651-53, and to statements made outside of, but in connection with, such proceedings. *Id.* at 653-54. Extrinsic statements protected by the privilege include (1) statements made with the direct purpose of initiating a judicial or quasi-judicial proceeding, such as a complaint, (2) statements prepared for *possible* use in connection with a pending proceeding, but which are unfiled at the time of the alleged injury, and (3) statements not designed to produce a proceeding "but which are connected contextually to a pending or ongoing proceeding." *Id.* at 654-59.

## B.     The Litigation Privilege Applies to BLBA Proceedings

The litigation privilege applies to quasi-judicial proceedings, including BLBA proceedings, where procedural safeguards have been built into the adversarial process. *See Offen v. Brenner*, 553 F. Supp. 2d 565, 571 (D. Md. 2008) (Titus, J.) (applying absolute litigation privilege to Department of Health and Human Services disciplinary proceedings), *aff'd*, 334 F. App'x 578 (4th Cir. 2009); *see also Mixter*, 215 Md. App. at 543 (applying litigation privilege to Attorney Grievance Commission proceeding); *Odyniec v. Schneider*, 322 Md. 520, 533-35 (1991) (applying litigation privilege to expert witness in health claims arbitration because of procedural safeguards and "[t]he social benefit derived from free and candid participation by potential witnesses in the arbitration process").

BLBA proceedings contain all of the same type of safeguards that the court in *Odyniec* enumerated as adequate to subject a quasi-judicial proceeding to the litigation privilege. *Odyniec*, 322 Md. at 533; *see* BLBA regulations, 20 C.F.R. §§ 725.362 (parties may be represented by counsel), 724.464 (hearings are open to the public), 724.414 (hearings are adversarial in nature), 724.457 (witnesses are sworn and subject to cross-examination), 725.455(b) (ALJ may rule on matters of evidence), 725.351 (district director and ALJ may regulate the course of proceedings), 725.458 (prehearing discovery is available), 725.455(d)

11

(each party may present a case by oral or documentary evidence), 725.418, 725.476 (district director and ALJ each must make determination in writing).[11]

C. **Any Allegedly "False Statements" Made in Dr. Wheeler's Role as an Expert Witness for BLBA Proceedings Are Protected by the Litigation Privilege**

Plaintiffs' claims are barred by the litigation privilege because those claims arise entirely out of representations allegedly made by Dr. Wheeler in the course of, and in connection with, BLBA proceedings. *See, e.g.*, Compl. ¶¶ 109 (alleging false statements made in connection with BLBA proceedings); 120 (same); 125 (same). Defendants are protected from civil liability as a matter of law even if Dr. Wheeler's "motive was malicious," he "knew the statement was false," or his "conduct was otherwise unreasonable." *Holt*, 128 F. Supp. 2d at 815.

The Maryland Court of Appeals opinion in *Odyniec* is particularly instructive. In that case, an expert witness (Dr. Schneider) retained by one defendant (an orthopedic surgeon) commented to the patient during a medical examination in an underlying medical malpractice arbitration that the patient had been "lied to" by a third doctor (Dr. Odyniec) and that the patient had undergone unnecessary vascular surgery as a result of that lie. 322 Md. at 524. Dr. Odyniec sued Dr. Schneider, alleging that his conclusions were false and his statements defamatory. *Id.* The Court of Appeals affirmed the circuit court's dismissal of Dr. Odyniec's claims, holding that Dr. Schneider's words and actions were protected by the absolute litigation privilege, even though the statement "may have been gratuitous, unsolicited, and in part irrelevant to the purpose for which he was employed, and was not made during the actual hearing before the arbitration

---

[11] The absolute litigation privilege applies to workers' compensation administrative proceedings that are analogous to BLBA proceedings. *See, e.g.*, *Mnyandu v. County of Los Angeles*, No. CV 14-6485 DSF, 2015 WL 6445652, at *3 (C.D. Cal. Aug. 4, 2015), *report and recommendation adopted*, 2015 WL 6453071 (C.D. Cal. Oct. 23, 2015) (dismissing claims arising from defendants' allegedly false statements to workers' compensation investigators, based on absolute immunity and litigation privilege); *Theisler v. DiDomenico*, 747 N.E.2d 859, 862 (Ohio Ct. App. 2000) (physician who reviewed workers' compensation claimant's file was immune from civil liability for fraud and misrepresentation); *Harris v. King*, 60 Cal. App. 4th 1185, 1187 (1998) (litigation privilege applies to workers' compensation proceedings); *Pacific Emp. Ins. Co. v. Adams*, 168 P.2d 105 (Okla. 1946) (extending litigation privilege to allegedly defamatory statement made in workers' compensation proceeding).

panel." *Id.* at 534. The Court held that the expert made the statement "in the course of his participation in that pending proceeding and therefore, without regard to its relevance, the verbal statement is accorded the same absolute privilege as if it had been made by a witness during the arbitration hearing itself." *Id.*

Application of the litigation privilege to Dr. Wheeler's expert work is even clearer. Dr. Wheeler performed x-ray B-readings on behalf of coal mine operators in the course of BLBA proceedings initiated by claimants. His opinions were made "in the course of his participation in that pending proceeding" and thus are subject to the absolute protection of the privilege. *See Offen*, 553 F. Supp. 2d at 567-68 (dismissing claims against consulting physician whose opinion on plaintiff's conduct gave rise to internal disciplinary proceedings).[12]

## II. PLAINTIFFS' ATTEMPT TO SUE AN ADVERSE EXPERT VIOLATES EXHAUSTION REQUIREMENTS, USURPS THE EXCLUSIVITY OF THE BLBA REGIME, AND IGNORES FUNDAMENTAL CONCEPTS OF DUTY OF CARE AND CAUSATION

Numerous courts, including the Fourth Circuit, have held that claimants must exhaust administrative remedies. *See infra* Part II.A. In addition, BLBA proceedings are the exclusive

---

[12] The litigation privilege has been applied consistently by courts throughout the country to bar claims against adverse expert witnesses in a variety of circumstances, in the rare cases where plaintiffs have attempted to pursue such claims. *See, e.g., Wilson*, 625 S.E.2d at 713 ("[A]n adverse expert witness enjoys civil immunity for his/her testimony and/or participation in judicial proceedings where such testimony and/or participation are relevant to said judicial proceedings."); *Raju v. Boylen*, No. Civ.A. 3:04CV809LN, 2005 WL 1362960, at *1 (S.D. Miss. June 3, 2005) (suit alleging that adverse expert witness "was grossly negligent in forming his opinion" barred by witness immunity); *Metoyer v. Connick*, No. 99-3019, 2000 WL 863133 at *4 (E.D. La. June 26, 2000) (doctor entitled to witness immunity for adverse expert testimony in § 1983 claim); *Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich. 1987), *aff'd*, 878 F.2d 1436 (6th Cir. 1989) (adverse expert witness's deposition testimony in earlier malpractice action against plaintiff physician absolutely protected against civil liability in action for defamation, negligence, and fraud); *J & M Co. v. Whynott*, No. CV040182710S, 2004 WL 2397329, at *1 (Conn. Super. Sept. 22, 2004) (plaintiff's claims against adverse expert witness barred by doctrine of absolute immunity); *Zuber v. Buie*, 849 So.2d 559, 563 (La. Ct. App. 2003) ("[T]he fundamental principles of witness immunity continue to shield a for-hire, volunteer witness against an adverse party's subsequent defamation claim."); *Riemers v. O'Halloran*, 678 N.W.2d 547, 551 (N.D. 2004) (accountant enjoys absolute immunity for testimony as adverse expert in divorce action); *Eye Med. & Surgical Ass'n, Inc. v. Advantage Health Partners*, No. 84585, 2005 WL 23360, at *3 (Ohio App. Jan. 6, 2005) (holding doctor who acted as adverse expert witness immune from civil liability for "any tortious acts she allegedly committed in that capacity"); *Cooper v. Parker-Hughey*, 894 P.2d 1096, 1099 (Okla. 1995) (adverse expert witness immune from suit based upon testimony in criminal trial of plaintiff); *Hoechlin v. Urbiha*, 127 Wash. App. 1010 (2005) (affirming dismissal of claims based on adverse expert's witness immunity).

forum for claimants to recover black lung benefits. *See infra* Part II.B. The claimants in this case participated in robust BLBA proceedings, and benefits ultimately were awarded in each case. *See* Exs. B, C. If Plaintiffs believe an award of additional benefits is warranted, they must pursue them through the administrative process. Plaintiffs cannot escape exclusivity and re-litigate those benefit decisions through the artifice of a direct suit against a non-party expert to the administrative proceedings that re-labels the statutory remedy as tort "damages." Finally, an adverse expert witness owes no duty to the Plaintiffs or the original claimants – whose benefit claims the expert openly opposed – and his expert work cannot be isolated and said to have legally caused the failure of Plaintiffs' fathers to recover additional benefits in the administrative process. *See infra* Part II.C.

A. **The BLBA Claimants Must Exhaust Administrative Remedies**

Plaintiffs' claims should be dismissed because they were provided the opportunity to challenge Dr. Wheeler's opinions in their administrative proceedings (including after the CPI article), they were awarded benefits, and any claim that additional benefits should be awarded also must be brought in the administrative process.

The Fourth Circuit, consistent with other courts, has held that BLBA claimants must exhaust all administrative remedies prior to seeking further review of benefit decisions, or else they waive issues not raised below. *See BethEnergy Mines Inc. v. Cunningham*, 104 F. App'x 881 (4th Cir. 2004) (coal company waived timeliness argument not raised with ALJ or Benefits Review Board and thus failed to exhaust administrative remedies); *see id.* at 883-84 (requiring exhaustion of administrative remedies because, among other things, "judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record" in an adversarial proceeding such as a BLBA case); *see also Helton v. Peabody Coal Co.*, No. 96-3069, 1996 WL 554553, at *2 (6th Cir. 1996) (claimant could not argue that ALJ and BRB

should not have relied on negative x-ray readings because "this court will not consider this argument not raised in any agency proceeding prior to this appeal"). This requirement applies equally to Plaintiffs, who cannot escape exhaustion and raise new claims in a suit against an adverse expert witness rather than pursuing administrative options. *See infra* Part II.C.

The Fourth Circuit has emphasized the requirement to present all pertinent arguments to the Benefits Review Board. *See, e.g.*, *Marfork Coal Co. v. Weis*, 251 F. App'x 229, 230, 237-38 (4th Cir. 2007) (affirming BRB decision and precluding claimant from challenging start date for benefits because claimant failed to raise issue with BRB); *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 223, 225 (4th Cir. 2009) (holding, in claim by longshoreman for benefits under related Longshore and Harbor Workers' Compensation Act ("LHWCA"), that employer waived review of issues not raised before BRB and noting that policy considerations of "preserving the exhaustion requirement and respecting agency expertise" were well served by finding waiver).[13]

If Plaintiffs seek additional benefits, including through further challenge to Dr. Wheeler's work, they must raise their new arguments through any available administrative proceedings. As noted above, they could not appeal the administrative outcome to the Fourth Circuit based on a challenge not previously raised in the administrative process. As explained below, this Court should not permit Plaintiffs to accomplish indirectly through a separate action what they have not done, or are prohibited from doing, within the statutorily crafted BLBA program.

---

[13] *See also Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 663 (6th Cir. 2015); *Drummond Co., Inc. v. Dir., Office of Workers' Comp. Programs*, 650 F. App'x 690, 690-91 (11th Cir. 2016) (holding that "if the administrative proceedings were adversarial and resembled court proceedings, then courts ought to apply an issue exhaustion requirement, lest courts encourage litigants to 'bypass' agency requirements" and noting that "there can be no doubt that proceedings held before the BRB were adversarial").

## B.     BLBA Remedies Are the Exclusive Means to Obtain Black Lung Benefits

The BLBA represents the exclusive remedy for coal miners seeking to obtain benefits for disability due to pneumoconiosis. *See Dir., Office of Workers' Comp. Programs v. Peabody Coal Co.*, 554 F.2d 310, 320 (7th Cir. 1977) (holding that the LHWCA's exclusivity provision, 33 U.S.C. § 905, "was or is incorporated into the black lung legislation"); *id.* at 321 n.14 (noting that Section 5 of the LHWCA, incorporated into the BLBA, "deals with the important substantive requirement making liability exclusive"); *Reich v. Youghiogheny & Ohio Coal Co.*, 66 F.3d 111, 113 (6th Cir. 1995) ("The [BLBA] Act incorporated the procedural provisions of the [LHWCA], 33 U.S.C. §§ 901-950 . . . except as otherwise provided . . . ."); *Comp. Dep't of Dist. Five, United Mine Workers of Am. v. Marshall*, 667 F.2d 336, 338 n.2 (3d Cir. 1981) ("Much of the statutory scheme for both administrative and judicial review of benefits determinations under the BLBA is borrowed from the [LHWCA], 33 U.S.C. § 901, et seq.").

In *Brink v. Continental Insurance Company*, 787 F.3d 1120 (D.C. Cir. 2015), plaintiffs brought a purported class action in federal court stemming from workers' compensation benefits allegedly owed to class members under the Defense Base Act which, like the BLBA, incorporates the LHWCA's exclusivity provision. The court dismissed plaintiffs' tort, RICO, and other claims against their employers, holding that, "based on appellants' own allegations, their class-wide tort claims (including the alleged intentional torts) directly relate to their claims for Base Act benefits" and therefore were barred by the statutory exclusivity provisions. *Id.* at 1125; *see also id.* at 1126-27 ("Because the statutory scheme of the Base Act and Longshore Act contains exclusive remedies, it 'leaves no room' for appellants' RICO claims.").[14]

---

[14] The court also rejected plaintiffs' claim that the class had no remedies under the statutory scheme "for the tortious injuries caused by [their employers'] intentional actions" and held that dismissal was warranted for plaintiffs' failure to exhaust administrative remedies. *Brink*, 787 F.3d at 1126, 1128.

If statutory exclusivity is to retain any meaning, claimants who may have hoped for additional statutory benefits from their employer cannot be permitted to pivot as Plaintiffs do and seek to recover these additional benefits as tort "damages" by commencing a lawsuit entirely outside the BLBA regime against a witness whose only role was to assist the employer in the administrative process. *See, e.g.*, Compl. ¶¶ 115, 132, 144 (framing relief in terms of lost benefits); *see also Fox*, 739 F.3d at 139 (holding that coal company had not committed "fraud on the court" by failing to disclose certain pathology reports in BLBA proceedings, and noting that fraud on the court doctrine has "never permitted claimants to relitigate old claims they have lost, simply because a better prior case presentation might have resulted in an earlier success").[15]

The Department of Labor's guidance regarding the procedure for new claims by claimants and their survivors who had been involved in a proceeding where Dr. Wheeler provided an adverse opinion reinforces the exclusivity of the BLBA statutory remedies. *See Q&As*, https://www.dol.gov/owcp/Q_and_A_BL_LETTERS_TO_CLAIMANTS.pdf. Indeed, posthumous benefits were awarded here in both cases after publication of the CPI article, *see* Compl. ¶¶ 81, 94, and Barr's award opinion shows that the CPI article and the substance of Dr. Wheeler's opinions were given full consideration. *See* Ex. B at 26-30.

**C.     Plaintiffs' Attempt to Recover Statutory Benefits Through Legal Claims Against an Adverse Expert Disregards Fundamental Concepts of Duty of Care and Causation**

Plaintiffs' effort to recover additional statutory benefits through legal claims against an adverse expert witness also ignores two outcome-determinative facts: (a) Dr. Wheeler and the other Defendants owe no duty to Plaintiffs that could give rise to liability; and (b) a judicial

---

[15] While workers' compensation statutes may permit a claimant to pursue court claims against third parties (but not the employer), such third-party lawsuits typically seek personal injury damages for independent torts that are distinct from the statutory benefits available from the employer. Here, by contrast, Plaintiffs simply seek additional statutory benefits from a witness whose only role was to assist the employer and the statutory process. Plaintiffs' attempt improperly subverts BLBA exclusivity. *See Lauria v. Donahue*, 438 F. Supp. 2d 131, 141 (E.D.N.Y. 2006) (exclusivity of workers' compensation provision bars a plaintiff from bringing suit against employer's agent).

determination that Dr. Wheeler's alleged misstatements legally caused the denial of additional benefits is impossible because this Court cannot re-litigate the administrative proceedings, all remedies must be pursued in the exclusive forum, and in any event causation is not so easily isolated in a complex administrative process to a single factor such as one expert's opinions.

An adverse expert witness who assists coal mine operators to defend against BLBA claims owes no duty to an opposing party. *See Feild v. Graffagnino*, 514 F. Supp. 2d 1036, 1046 (W.D. Tenn. 2007) ("Expert witnesses do not owe any duty to an adverse party; instead, they owe a duty to the Court to testify truthfully and honestly."). Even where the existence of a duty owed to Plaintiffs is not an element of a particular claim alleged, the utter absence of any duty, privity, or relationship between Dr. Wheeler and Plaintiffs' fathers underscores the absence of any claim, no matter how characterized.

Courts routinely have held that subsequent legal claims filed directly against physicians who performed independent medical examinations ("IMEs") on behalf of employers in workers' compensation or insurance lawsuits "fail as a matter of law for lack of a duty of care."[16] Plaintiffs cannot remedy the fatal absence of duty by characterizing their claims against a witness as intentional misconduct. *See Maicobo Inv. Corp. v. Von Der Heide*, 243 F. Supp. 885, 892 (D. Md. 1965) (Thomsen, J.) (no civil action exists against witness for allegedly perjured testimony); *Hokanson v. Lichtor*, 626 P.2d 214, 218-19 (Kan. App. 1981) (collecting cases from the

---

[16] *See, e.g., Lafleur v. Jetzer*, No. 4:14-CV-04175-KES, 2015 WL 6157745, at *5 (D.S.D. Oct. 20, 2015) (quoting *Smith v. Radecki,* 238 P.3d 111 (Alaska 2010)); *Joseph v. McCann,* 147 P.3d 547, 551 (Utah Ct. App. 2006) (no doctor-patient relationship and no duty owed where doctor was contracted by city to perform an IME, and court notes that a majority of jurisdictions support this analysis); *Erpelding v. Lisek,* 71 P.3d 754, 757 (Wyo. 2003) (defendant did not owe plaintiff a duty of care in performing independent psychological evaluation for the benefit of plaintiff's employer, and court notes that "this conclusion is in accord with virtually every other court that has considered this issue"); *Hafner v. Beck*, 916 P.2d 1105, 1108 (Ariz. Ct. App. 1995) (no doctor-patient relationship or duty exists where psychologist was hired by insurance carrier to evaluate claimant and not to treat her because psychologist's duty of care runs only to the carrier, not the patient); *Henkemeyer v. Boxall*, 465 N.W.2d 437, 439 (Minn. Ct. App. 1991) (no doctor-patient relationship or duty exists where plaintiff was examined adversely to determine eligibility for workers' compensation benefits).

"overwhelming majority of authority" that "no civil cause of action for damages exists for either perjury or conspiracy to commit perjury").[17]

Plaintiffs' claims also cannot establish necessary legal causation between any opinion rendered by a single adverse expert and the administrative outcome. A decision maker cannot deny a claim for benefits based solely on the negative interpretation of a chest x-ray. 20 C.F.R. § 718.202(b). The regulations expressly identify additional ways that a claimant can prove pneumoconiosis. § 718.202(a). The claim that Dr. Wheeler's opinions caused the miners not to receive certain benefits thus is undercut by the regulatory framework identifying a claimant's options in meeting the burden of proof. Moreover, if the claimants disagreed with the administrative outcome, they should have pursued further administrative remedies; their election not to do so is the direct cause of their failure to prevail and receive benefits. No basis exists for a Court to entertain a collateral attack on the administrative process, much less attempt to isolate a single factor in the earlier proceedings (one expert opinion among many that claimants were free to challenge through deposition, cross-examination, and otherwise).[18]

Plaintiffs also do not allege what additional benefits they believe should have been awarded. *See* Compl. ¶ 82 (alleging that, as a result of Defendants' alleged actions, Day "was denied and never recovered ***certain benefits*** earned under the BLBA") (emphasis added); ¶ 94 (alleging that Barr's posthumous award "did not include past benefits already lost"). Nor do they make any effort to explain how Dr. Wheeler's opinion could have caused a denial of the additional benefits in light of the administrative proceedings permitted following the release of the DOL guidelines relating to Dr. Wheeler. *See* Compl. ¶¶ 81, 94 & Exs. B, C.

---

[17] This absence of duty is in addition to the fact that an adverse expert witness is protected from liability by the litigation privilege, *see supra* Part I, and legally defective allegations of justifiable reliance. *See infra* Part IV.A.

[18] Causation analysis also would make it virtually impossible for this action to proceed as a class action. The Court would be required to conclude that Defendants' actions were the sole but-for cause of the denial of benefits of hundreds, if not thousands, of claimants, each with individual medical histories and individual agency proceedings.

### III.  PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS

Plaintiffs' claims are barred by the applicable statutes of limitations because they seek redress for alleged injuries that undisputedly occurred well outside the limitations period. Dismissal is appropriate where "it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 721-22 (D. Md. 2014) (Messitte, J.).

Plaintiffs' common law claims for fraud, tortious interference, negligent misrepresentation, and unjust enrichment are all subject to a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *United States v. Allen-Williams*, No. JFM-11-1001, 2011 WL 4985817, at *4 (D. Md. Oct. 19, 2011) (Motz, J.) (fraud); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 424-25 (D. Md. 2006) (Chasanow, J.) (tortious interference); *G&M Oil Co. v. Glenfed Fin. Corp.*, 782 F. Supp. 1085, 1088 (D. Md. 1991) (Ramsey, J.) (negligent misrepresentation); *Willox v. Ladas*, No. CCB-13-2096, 2014 WL 4662049, at *4 (D. Md. Sept. 18, 2014) (Blake, J.) (unjust enrichment).  RICO does not include an express statute of limitations, but the Supreme Court and the Fourth Circuit have held that civil RICO claims are subject to a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).

The complaint alleges that Day filed a claim for BLBA benefits in 2004, and Barr in 1989.  Compl. ¶¶ 73, 85.  The complaint does not specify when Day's claim originally was decided, but the ALJ denied Day's claim on remand on May 31, 2011, more than five years before the complaint was filed.  *See* Ex. A.  Barr filed four unsuccessful claims, which were denied in 1981, 1992, 2008, and 2010.  *See* Ex. B at 9 n.26.  Plaintiffs' claims based on Dr. Wheeler's work in these proceedings are time barred.

Plaintiffs' time-barred claims cannot be saved by the discovery rule because Plaintiffs and their fathers had the ability through diligence to discover facts allegedly supporting their claims even before their BLBA proceedings concluded. Under the discovery rule, the limitations period does not begin to run "until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 986 (D. Md. 2002) (Smalkin, C.J.) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95-96 (2000)). The claimants knew that Dr. Wheeler provided expert opinions on behalf of their employers, and that, contrary to their own experts, read the x-rays as negative. They had the opportunity to depose and cross-examine Dr. Wheeler, to have their own medical expert analyze Dr. Wheeler's opinions, and to challenge those contrary opinions within the administrative process if they did not believe they comported with ILO classifications. They also had an opportunity to pursue all administrative appeals. Accordingly, the limitations period was not tolled.

The presentation of any evidence in an adversarial proceeding carries with it "the risk that its adversary will discredit it." *Fox*, 739 F.3d at 137. Plaintiffs had at their disposal the tools of discovery, deposition, and "cross-examination, which the Supreme Court has recognized is the 'greatest legal engine ever invented for the discovery of truth.'" *Id.* (quoting *California v. Green*, 399 U.S. 149, 158 (1970)); *Briscoe*, 460 U.S. at 334 ("truth-finding process" best left to "the crucible of the judicial process"). The adversarial process creates a presumption that the claimants should have discovered Dr. Wheeler's alleged misconduct far earlier. *See Fox*, 739 F.3d at 138 ("Our legal system therefore expected Fox to uncover Elk Run's conduct during the adjudication of Fox's 1999 [BLBA] claim or, if it amounted to Rule 60(b)(3) fraud, at most one

year after the 2001 judgment became final.").  Because they did not, Plaintiffs' claims should be dismissed.

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM ON EACH OF THEIR COUNTS[19]

### A.    Plaintiffs' Fraud Count Fails to State a Claim

To state a claim for fraud, a plaintiff must allege: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation."  *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 612 (D. Md. 2014) (Hollander, J.) (quoting *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 544 (2007)).[20]  Plaintiffs must plead the circumstances of fraud with particularity pursuant to Fed. R. Civ. P. 9(b).

Dr. Wheeler provided his *opinions*, which cannot be considered false representations of material fact.  *See* Compl. ¶ 70 ("In exchange for these opinions . . ."), ¶ 78 ("Dr. Wheeler and the other two members of his Black Lung Unit opined . . .").  And it is hardly surprising that coal mine operators would present expert evidence that supports their position in adversarial

---

[19] The Court may apply the law of Maryland (where Dr. Wheeler performed his work) to Plaintiffs' state law claims because no substantive difference exists between it and the law of West Virginia (where the fathers of both Plaintiffs resided at the time their claims were denied), *see infra* notes 20, 21, 24, 25 (demonstrating lack of material difference between Maryland and West Virginia law), and they are the only two states' laws that arguably govern Plaintiffs' state law claims.  *World Fuel Servs. Trading DMCC v. Hebei Prince Shipping Co. Ltd.*, 783 F.3d 507, 514-15 (4th Cir. 2015) (choice of law analysis is unnecessary, and forum state's law may apply, where "it makes no discernable difference to the relevant analysis"); *Mallinckrodt v. Whittaker MA Bioproducts Inc.*, 81 Md. App. 96, 103 (1989) (same).  Plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") is governed by federal law because RICO is a federal statute.

[20] *See also Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 585 n.26 (W. Va. 2013) (requiring that plaintiff allege a material misrepresentation, justifiable reliance, causation, and harm to state a claim for fraud under West Virginia law).

proceedings; the fact that they did so does not make the opinions false or fraudulent, but only subject to rebuttal.

Plaintiffs also fail to allege that Defendants made any representation **to the claimants**. Plaintiffs allege that Dr. Wheeler's opinions were submitted to the BLBA tribunals and the ALJ relied on those opinions. Compl. ¶¶ 79, 93. To the extent fraud occurred at all (and it did not), such fraud would be against the BLBA tribunal, not Plaintiffs. *See Fox*, 739 F.3d at 135 (plaintiff unsuccessfully sought to have BLBA denial set aside due to fraud on the court). Finally, Plaintiffs quote selectively from ILO Guidelines and the CPI article, *see* Compl. ¶¶ 39-40, 57-61, but fail to allege specifically how or if Dr. Wheeler's alleged deviations from the ILO Guidelines allegedly resulted in incorrect or otherwise misleading interpretations of Plaintiffs' fathers' chest x-rays, not to mention intentionally so, thus failing to meet the particularity test under Rule 9(b).

The original claimants also could not have justifiably relied on representations by an adverse expert that did not support, but rather contradicted, their positions. *See McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 376 (D. Md. 2005) (Titus, J.) (Maryland courts impose liability for fraud only where "the misrepresentation substantially induced the plaintiff to act . . . and plaintiff's reliance on the misrepresentation was reasonable. This requires a court to consider inducement and reliance from the perspective of the plaintiff."). The adversarial nature of the administrative process dictates that claimants will not rely on an opposing expert's findings but rather challenge them when that expert disagrees with the claimants' own witnesses. *See Fox*, 739 F.3d at 137-38 (holding that plaintiff should have uncovered alleged wrongdoing through cross-examination and other means during the BLBA proceedings). Day's counsel in fact argued to the BRB that the ALJ had "improperly credited"

Dr. Wheeler's opinion.  *Day*, 2010 WL 4539414, at *1.  Moreover, benefits were awarded to both claimants after the DOL guidance was released.

### B.    Plaintiffs' Tortious Interference Count Fails to State a Claim

"Tortious interference with occupational economic interests" is not a cognizable claim under Maryland or West Virginia law.  *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 542 (D. Md. 2006) ("No authority suggests that a cause of action exists to recover for tortious interference with one's occupation and livelihood in general."); *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008) (West Virginia only recognizes claims for tortious interference with contract or business relations).  For this reason alone, Plaintiffs' claim should be dismissed.

To state a claim for tortious interference with business relationships, which is recognized in appropriate circumstances, a plaintiff must allege: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damages and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."  *View Point*, 9 F. Supp. 3d at 615 (quoting *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628-29 (2003)).[21]

Where, as here, no contractual relationship exists between the parties, "liability will only attach to interference that is either 'wrongful or unlawful.'"  *Id.* (noting that such "wrongful or unlawful acts" include "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith").  Because Plaintiffs fail to allege sufficiently any underlying tortious or wrongful act, Plaintiffs cannot state a claim for tortious interference.  Plaintiffs conclusorily

---

[21] *See also Hatfield*, 672 S.E.2d at 403 (to establish tortious interference with business relationships under West Virginia law, a plaintiff must allege "an intentional act of interference" to an existing business relationship by a person outside that relationship, harm caused by that interference, and damages resulting).

allege that Defendants acted "fraudulently and wrongfully," Compl. ¶ 120, and allege elsewhere that Defendants committed fraud and negligent misrepresentation, violated RICO, and were unjustly enriched, but each of those claims fails as described throughout this memorandum, and thus the tortious interference claim also must fail. *See* Parts I, IV.A, C, D, E; *see also Baron Fin.*, 471 F. Supp. 2d at 541 (where underlying allegation of wrongful acts is dismissed, tortious interference claim must be dismissed). Further, other than bald allegations, Plaintiffs fail to allege that Dr. Wheeler intended to harm Day or Barr.

Plaintiffs also fail to allege sufficiently harm to the coal miners' business interests caused by Defendants' conduct. *See* Compl. ¶¶ 118-22. Additional statutory benefits for a possible physical condition are not the equivalent of harm to a business relationship or even occupational interest (if such a tort were to exist). *Cf. infra* Part IV.C.3 (noting, in the RICO context, that loss of benefits does not constitute an injury to business or property). The complaint includes only vague allegations about alleged interference "in Plaintiffs' and members of the Class' economic relationship that was presents [*sic*] as part or [*sic*] Plaintiffs' and the Class members' occupation." Compl. ¶ 119. To the extent that Plaintiffs refer to their fathers' employment, a claimant seeking BLBA benefits must demonstrate total disability – *i.e.*, an inability to work – and thus no action of Defendants could have affected Plaintiffs' fathers' employment. 20 C.F.R. § 718.204. In any event, benefits were awarded to both men.

### C. Plaintiffs' Civil RICO Count Fails to State a Claim

Plaintiffs' civil RICO claim fails because Plaintiffs (1) fail to allege sufficiently any underlying racketeering activity, let alone a pattern of such activity, (2) fail to identify an "enterprise" distinct from the Defendants themselves, (3) fail to allege injuries to business or

property recoverable under a RICO private right of action, and (4) allege only "group allegations" that fail to meet the heightened pleading standard of Rule 9(b).[22]

## 1.    *Plaintiffs Fail to Allege Racketeering Activity Sufficiently*

Plaintiffs have not met the high bar for alleging that Defendants committed mail fraud, obstructed justice, or otherwise engaged in racketeering activity.   The RICO statute defines "racketeering" to encompass many criminal offenses, including "any act which is indictable under . . . [18 U.S.C.] section 1341 (relating to mail fraud) . . . [and] section 1503 (relating to obstruction of justice)."   18 U.S.C. § 1961(1).   A civil RICO claim is "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity."   *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010).   Because the penalties authorized by RICO are "drastic," in order "to provide society with a powerful response to the dangers of organized crime," courts must "exercise caution 'to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions.'"   *Id.*   RICO "is not a cause of action to be pled lightly," and "RICO treatment is reserved for conduct whose scope and persistence pose a special threat to social well-being."   *Biggs v. Eaglewood Mortg.*, 582 F. Supp. 2d 707, 714 (D. Md. 2008) (Messitte, J.), *aff'd*, 353 F. App'x 864 (4th Cir. 2009).

To state a civil RICO claim, plaintiffs must allege that defendants engaged in "a pattern of racketeering activity."   *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000).   "Racketeering activity" includes predicate criminal acts such as mail fraud, wire fraud, and interstate transport of money fraudulently obtained.   *See* 18 U.S.C. § 1961(1)(B).   A plaintiff must allege at least two predicate acts to allege a "pattern."   § 1961(5).   Plaintiffs allege that

---

[22] *See Morley v. Cohen*, 610 F. Supp. 798, 810 (D. Md. 1985) (Ramsey, J.) (to state a civil RICO claim, plaintiff must allege that defendants "(1) were employed by or associated with (2) an enterprise (3) engaged in, or the activities of which affect, interstate or foreign commerce, and (4) that the defendants conducted or participated in the conduct of the enterprise's affairs (5) through a pattern of racketeering activity").

Defendants violated RICO by "engaging in mail fraud, obstructing justice, and finally violating federal rules and regulations related to the BLBA." Compl. ¶ 124.

This Court and the Fourth Circuit regularly reject RICO claims based on predicate acts of mail and wire fraud, as nearly every commercial transaction involves use of the mails or wires, and courts are averse to allowing ordinary civil disputes to be improperly elevated into racketeering claims. *See, e.g.*, *Bourgeois*, 3 F. Supp. 3d at 462; *Al-Abood,* 217 F.3d at 238; *Biggs*, 582 F. Supp. 2d at 714. To show mail fraud at the pleading stage, Plaintiffs must allege that Dr. Wheeler did not merely make a false representation via the mail system, but that he did so with the specific intent to harm the Plaintiffs and deprive their fathers of BLBA benefits. *See Bourgeois*, 3 F. Supp. 3d at 462 ("To be convicted of mail fraud or wire fraud, a defendant must specifically intend to lie or cheat or misrepresent with the design of depriving the victim of something of value.") (quoting *United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012)); *cf. Fox*, 739 F.3d at 135 (if fraud occurred at all, it would be fraud on the court). Further, Plaintiffs fail to allege with particularity what was mailed, when, by whom, and what they gained thereby, as required by Rule 9(b), let alone plead a pattern under RICO. Plaintiffs' allegations regarding Dr. Wheeler's alleged intent are presented only in conclusory fashion and are insufficient to meet that standard. *See* Compl. ¶ 127 (". . . for the purpose of perpetuating a fraud and scheme to cause economic injury to Plaintiffs and the Class.").

Plaintiffs' allegations of obstruction of justice similarly fail, because that crime cannot be committed in the context of BLBA administrative proceedings. *See Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *5 (D. Md. Mar. 17, 2015) (Hazel, J.) ("To constitute an offense under th[e] [obstruction of justice] statute, the [offending] act must relate to a proceeding in a federal court of the United States.") (quoting *O'Malley v. N.Y.C. Transit Auth.*,

896 F.2d 704, 708 (2d Cir. 1990)); *see also United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."). Plaintiffs allege no acts related to a federal court proceeding, and thus they cannot base a civil RICO action on allegations of obstruction of justice.

Plaintiffs finally claim without support that "Defendants are also in violation of RICO by refusing to apply the ILO classification system as the rules and regulations require, and as required by the B-reader code of ethics when assessing Black Lung Benefits under the BLBA." Compl. ¶ 131. This is, at most, an allegation that Defendants committed fraud against the administrative body, not Plaintiffs. *See Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849, at *10-*11 (D. Md. Sept. 5, 2014) (Hollander, J.) (dismissing RICO claim by private individuals arising from defendants' alleged fraud against a bank); *Fox*, 739 F.3d at 135. Moreover, an alleged failure to follow a classification system is not capable of substantiating fraudulent intent. Such allegations do not constitute racketeering under the RICO statute. *See* 18 U.S.C. § 1961(1).

### 2. *Plaintiffs Fail to Allege an "Enterprise" Distinct from Defendants*

To establish an "enterprise" for RICO purposes, a plaintiff must allege two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). A plaintiff thus cannot satisfy this element merely by alleging an enterprise consisting of "an association of a corporate defendant with its own employees." *Gondel v. PMIG 1020, LLC*, No. CCB-08-1768, 2009 WL 248681, at *4 (D. Md. Jan. 22, 2009) (Blake, J.) (dismissing RICO claim that alleged an enterprise consisting of three separate corporate defendants and their agents for failing to sufficiently differentiate between "person" and "enterprise"); *see also Riverwoods*

*Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented."); *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000) ("An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself.").

Plaintiffs do not adequately allege an enterprise. The complaint alleges that Dr. Wheeler was the "agent" of each of the Hopkins defendants, *see* Compl. ¶¶ 7, 124-31, but provides no specifics to support such a conclusion. The gravamen of the complaint is that Dr. Wheeler, acting as an identified expert witness, allegedly failed to follow B-reader guidelines. Even if true, this allegation is insufficient to show a RICO enterprise. *Gondel*, 2009 WL 248681, at *4 (Blake, J.) (plaintiff may not merely allege an enterprise consisting of "an association of a corporate defendant with its own employees").

In *Gondel*, this Court considered allegations of a fraudulent conspiracy by three named corporate defendants. 2009 WL 248681, at *4. When pressed, plaintiffs alleged that the "enterprise" for RICO purposes consisted of the three corporate defendants themselves, acting through their agents. *Id.* at *4 & n.8. The Court dismissed the RICO claim, holding that, by "alleging only that these corporate defendants—through themselves and their agents—engaged in racketeering activity, plaintiffs make precisely the type of RICO allegation that fails to sufficiently differentiate between 'person' and 'enterprise.' Therefore, plaintiffs have failed to make out a *prima facie* case under § 1962(c)." *Id.* at *4.

### 3. *Plaintiffs Fail to Allege Injury to Business or Property*

Plaintiffs' apparent claim that their fathers did not receive additional benefits as a result of Defendants' alleged racketeering activity, Compl. ¶ 132, does not constitute a required injury

to business or property under RICO and thus is insufficient to state a claim.  RICO provides that "[a]ny person injured **in his business or property** by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court."  18 U.S.C. § 1964(c) (emphasis added).  Allegations of "personal injuries and losses from those injuries will not be considered injuries to business or property under the act."  *Dickerson v. TLC The Laser Eye Ctr. Inst., Inc.*, 493 F. App'x 390, 394 (4th Cir. 2012); *see also Bast v. Cohen, Dunn & Sinclair P.C.*, 59 F.3d 492, 495 (4th Cir. 1995).

Loss of benefits is not sufficient to constitute an injury to "business or property." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562-66 (6th Cir. 2013) (dismissing RICO claims alleging that racketeering activities resulted in loss of workers' compensation benefits because such losses "are simply a shortcoming in the compensation they believed they were entitled to receive for a personal injury" and "are not different from the losses the plaintiffs would experience if they had to bring a civil action to redress their personal injuries and did not obtain the compensation from that action they expected to receive" and because the existence of a workers' compensation system "does not transform a disappointing outcome in personal injury litigation into damages that can support a RICO civil action").  Plaintiffs' allegations that they "were wrongfully denied federal benefits which were legally earned" as a result of Defendants' alleged racketeering, Compl. ¶ 132, at best constitute compensation related to black lung and do not give rise to a RICO claim under 18 U.S.C. § 1964(c).[23]

### 4.  *Plaintiffs' Allegations Fail to Meet the Pleading Standard of Rule 9(b)*

Plaintiffs' civil RICO claim also fails because the complaint contains only insufficient group allegations about Defendants as a whole.  Fraud-based civil RICO claims must be pled

---

[23] Plaintiffs also seek treble damages related to their RICO claim and punitive damages in their Prayer for Relief. *See* Compl. ¶¶ 135, 154(c).  Any such damages would be available to Plaintiffs only upon proving liability for additional BLBA benefits.

with particularity pursuant to Fed. R. Civ. P. 9(b). *Menasco v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). As such, fraud-based RICO claims must allege the "time, place, and content of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding*, 714 F.3d at 781 (quoting *Harrison*, 176 F.3d at 784).

When multiple defendants are sued, the facts alleged must be sufficient to support inferences of fraud by **each** defendant. *See, e.g.*, *Baker v. Sturdy Built Mfg., Inc.*, No. 3:07CV212-HEH, 2007 WL 3124881, at *3 (E.D. Va. Oct. 23, 2007); *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980). Group allegations and claims about "collective responsibility" are insufficient because **each** defendant is entitled to know "what misrepresentations are attributable to them and what fraudulent conduct they are charged with." *See Comwest, Inc.*, 765 F. Supp. at 1471 (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal. 1988)). Thus, "lumping" all defendants together in fraud allegations does not satisfy Rule 9(b). *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

Plaintiffs' allegations about "Defendants," *see* Compl. ¶¶ 124-31, are impermissible "group allegations" because they fail to differentiate among Dr. Wheeler and the four Johns Hopkins entities. *See Comwest, Inc.*, 765 F. Supp. at 1471 (group allegations fail to state a RICO claim because each defendant must be able to understand "what misrepresentations are attributable to them and what fraudulent conduct they are charged with"); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

### D.    Plaintiffs' Negligent Misrepresentation Count Fails to State a Claim

To state a claim for negligent misrepresentation, a plaintiff must allege that: "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *Bourgeois*, 3 F. Supp. 3d at 456-57 (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136 (2007)).[24]

As set forth in Parts IV.A-C, Plaintiffs have failed to plead facts that show that Defendants made any misrepresentations that could entitle them to relief. *Id.* at 458 (dismissing negligent misrepresentation claim where plaintiff failed to allege any misrepresentation).

Defendants owed no duty of care to Plaintiffs. *See supra* Part II.C. "The tort of negligent misrepresentation arises 'when the defendant owes a duty of care in communicating information *to the plaintiff* and that duty is breached, causing pecuniary or personal injury to the plaintiff.'" *Wiseman v. First Mariner Bank*, Civ. Action No. ELH-12-2423, 2013 WL 5375248, at *22 (D. Md. Sept. 23, 2013) (Hollander, J.) (emphasis added) (quoting *Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 11, 756 A.2d 548, 553 (2000)). Dr. Wheeler's opinions were offered to the BLBA adjudicators on behalf of the coal mine operators.

Moreover, where an alleged failure to exercise due care results in economic loss only, the plaintiff must allege "an intimate nexus" between the parties as a condition to the imposition of tort liability. *Weisman v. Connors*, 312 Md. 428, 446 (1988); *Columbia Gas Transmission, LLC v. Mangione Enters. of Turf Valley, L.P.*, Nos. ELH-13-0115, ELH-13-2317, 2014 WL 4854853,

---

[24] *See also Wright v. Sutton*, No. 1:08-1431, 2011 WL 1232607, at *4 (S.D. W. Va. Mar. 29, 2011) (to state a claim for negligent misrepresentation under West Virginia law, a plaintiff must allege "inaccurate information . . . negligently supplied" by a defendant owing some sort of duty to the plaintiff, justifiable reliance, and harm).

at *17 (D. Md. Sept. 26, 2014) (Hollander, J.). Plaintiffs allege no such nexus here; Defendants had no direct or independent contact with the claimants whatsoever.

Justifiable reliance also is missing. *See supra* Part IV.A. No well pled allegation supports a finding that Defendants' actions were intended to induce any sort of action by the claimants or that they reasonably relied on expert opinions that contested, rather than supported, their claims. This conclusion is reinforced by the fact that both claimants were awarded benefits after the DOL guidance was released.

### E.    Plaintiffs' Unjust Enrichment Count Fails to State a Claim

To state a claim for unjust enrichment, a plaintiff must allege that: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew or appreciated the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return. *Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 WL 3829520, at *28 (D. Md. Aug. 1, 2014) (Hollander, J.) (quoting *Benson v. State*, 389 Md. 615, 651-52 (2005)).[25]

Plaintiffs and their fathers conferred no benefit on Defendants. Plaintiffs allege only that Defendants "were paid by employer coal companies." Compl. ¶ 70. In "an action for unjust enrichment the burden is on the plaintiff to establish that the defendant **holds plaintiff's money** and that it would be unconscionable for him to retain it." *Plitt v. Greenberg*, 242 Md. 359, 364 (1966) (emphasis added).

In addition, given that Dr. Wheeler acted as an adverse expert witness, and the claimants had the opportunity to depose, cross-examine, and otherwise challenge Dr. Wheeler's

---

[25] *See also Employer Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 471 (S.D.W. Va. 2013) (to state a claim for unjust enrichment under West Virginia law, a plaintiff must allege "(1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value").

conclusions, Plaintiffs cannot claim that any benefit received by Defendants was unjust or that it would be inequitable for Defendants to retain such benefits. *See Willis*, 2014 WL 3829520, at *28-*29 (holding that "plaintiff's unjust enrichment claims fail under *Iqbal* and *Twombly*, *supra*, because he has not adequately alleged a benefit conferred on defendants, which would be inequitable for defendants to retain").

## V. PLAINTIFFS MAKE NO SPECIFIC ALLEGATIONS AGAINST ANY OF THE HOPKINS ENTITIES

Plaintiffs' claims against the four Johns Hopkins entities should be dismissed because Plaintiffs make no specific allegations about any actions allegedly performed by any of those entities. Plaintiffs' claims turn on actions allegedly performed by Dr. Wheeler. *See, e.g.*, Compl. ¶¶ 58-62, 66, 75-76, 78, 89-93, 95. Plaintiffs do not, however, specify the alleged relationships of Dr. Wheeler with each of the Hopkins entities that allegedly form the basis for including them as defendants. *See id*. ¶ 7 (alleging without support that Dr. Wheeler is "an actual and apparent agent of each of the aforementioned Defendants").

Where Plaintiffs have made allegations about the Hopkins entities, those allegations are insufficient to state claims against them. Some of Plaintiffs' allegations about the Hopkins entities are conclusory in nature. *See, e.g., id.* ¶¶ 12 ("Defendants . . . have engaged in a pattern and practice with the intent to defraud . . . ."); 18 ("Defendants purposely and intentionally refused to abide by the stringent requirements of the Coal Act . . . ."); 56 ("Defendants Johns Hopkins, through its Black Lung Program, and Defendant Dr. Paul Wheeler consciously chose to disregard the law . . . ."). In other allegations, Plaintiffs use the term "Defendants" with regard to actions allegedly performed by Dr. Wheeler. *See, e.g., id.* ¶¶ 68 ("Other miners suffered loss in benefits due to delays in obtaining those benefits which should have been earned but for the readings and unlawful interpretations of Defendants."); 69 ("By deviating from the federal law

and regulations Defendants certified and agreed to abide by . . . ."); 82 ("As a result of Defendants' willful refusal to interpret chest x-rays in compliance with the ILO classification system . . . ."). The complaint does not identify any actions performed by any Hopkins entity independent of the allegations regarding Dr. Wheeler, and Plaintiffs' claims against those entities should be dismissed.

### CONCLUSION

For all these reasons, Defendants respectfully request that the complaint be dismissed with prejudice and in its entirety for failure to state a claim upon which relief may be granted.

| | |
|---|---|
| _____/s/_____ | _____/s/_____ |
| Andrew Jay Graham (Bar No. 00080) | Robert J. Mathias (Bar No. 00253) |
| Amy E. Askew (Bar No. 26709) | James D. Mathias (Bar No. 06311) |
| Justin A. Redd (Bar No. 18614) | Benjamin D. Schuman (Bar No. 28829) |
| KRAMON & GRAHAM PA | DLA PIPER LLP (US) |
| One South Street | The Marbury Building |
| Suite 2600 | 6225 Smith Avenue |
| Baltimore, Maryland 21202-3201 | Baltimore, Maryland 21209 |
| (410) 752-6030 (telephone) | (410) 580-3000 (telephone) |
| (410) 539-1269 (facsimile) | (410) 580-3001 (facsimile) |
| agraham@kg-law.com | robert.mathias@dlapiper.com |
| aaskew@kg-law.com | james.mathias@dlapiper.com |
| jredd@kg-law.com | ben.schuman@dlapiper.com |
| | |
| *Attorneys for Defendant Paul Wheeler, M.D.* | *Attorneys for Defendants The Johns Hopkins Health System Corporation, The Johns Hopkins Hospital, Inc., Johns Hopkins Imaging, LLC, and The Johns Hopkins University* |